## GALLAGHER v. HIRSH.

(Supreme Court, Appellate Division, First Department. December 15, 1899.)

1. CONTRACTS—BREACH—MEASURE OF DAMAGES.

Where the owner agreed to furnish a contractor with a place to store brick pending their use in the erection of a building, the measure of damages, the contractor being forced to remove the brick, was the cost of removing and storing them until needed.

2. SAME—QUESTION FOR JURY.

A complaint alleged that defendant, to induce plaintiff to remove brick from premises to be built on for less than the value of the work, fraudulently guarantied that the brick could be stored on a vacant lot adjacent till needed in the building, but that defendant did not control the lot, and that plaintiff was compelled to remove the brick, etc. Defendant denied the representations were false, or made to induce plaintiff to do the work at a less price, etc., or that he promised to guaranty undisturbed possession, but admitted he made the representations believing them to be true; denied that plaintiff relied on them; admitted plaintiff had undertaken the work at a price "somewhat" less than its value. *Held*, that it was error to submit the question of damages only, notwithstanding defendant pleaded willingness to pay any damage sustained; the nature of the contract being also for the jury.

3. SAME—CONSTRUCTION.

A building contract authorized the owner to make "additions to or omissions from the contract." *Held*, that the word "omissions" referred to those things abandoned and left out of the contract, and not to such as were taken from the contractor, and given to another to be performed.

4. SAME.

The measure of damages for being deprived of part of a contract is not the price agreed on, but the profits the contractor would have made in doing the work at an agreed price.

Appeal from trial term, New York county.

Action by Patrick Gallagher against Jacob Hirsh. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

C. Norwood, for appellant.

L. L. Kellogg, for respondent.

VAN BRUNT, P. J. The complaint alleged three causes of action. For a first cause of action the plaintiff alleged that the defendant, being the owner of certain premises known as "Nos. 3 and 5 West Eighteenth Street" in the city of New York, entered into a contract with the plaintiff to do the excavation and mason work and to construct the walls of a new building to be erected thereon; that, the plaintiff being about to enter upon said work of excavation and construction, the defendant employed the plaintiff to remove a large quantity of bricks and materials then upon the said premises by reason of the demolition of certain old buildings thereon; that, for the purpose of inducing the plaintiff to remove said brick, etc., for a price less than the fair and reasonable value of the work, the defendant represented to the plaintiff, and promised and agreed with the plaintiff, that such brick and other material could be stored and

61 N.Y.S.—39

remain upon a vacant lot immediately westerly from and adjacent to the said premises during the period required for the construction of such new building by the defendant, and that the defendant guarantied to the plaintiff the undisturbed possession of such adjacent lot for such purpose and during such period, and agreed that the plaintiff, in the construction of the new building, should be at liberty to use from such brick a large quantity of good and sound brick in the erection of the walls of the new building; that, relying upon such representations of the defendant, the plaintiff undertook to remove such brick and material from the premises of the defendant, to store the same upon such adjacent lot, to select and use therefrom such sound and suitable brick as could properly be used in the construction of such new building, and ultimately to remove from such premises all of such brick and other material for the sum of $400; that such sum of $400 was much less than the actual value of such proposed work of removal of said material; that the plaintiff, in consideration of said representations, promises, and agreements of the defendant, and of the benefits which would result to him, undertook such work of removal at a price far less than the actual value thereof; that, pursuant to such employment, the plaintiff removed said brick, and stored them upon the said adjacent lot, but that the representations of the defendant were in fact untrue, and he did not control the said lot used by the plaintiff as such place of storage, and was unable to assure to the plaintiff the free use or the undisturbed possession thereof; that the plaintiff was required to and did remove a quantity of brick and material from such lot, and was thereby hindered and prevented from using about 300,000 of good, sound, and suitable brick so accumulated and stored by the plaintiff in and about said work of construction, all of which he could have so used if said representations had been true; and that the plaintiff thereby sustained damage in the sum of $900 and interest. The second cause of action having been dismissed at the opening of the trial, it is not necessary to consider the same further. The third cause of action was for the last installment of $3,100 due under the contract, and for $638.38 for extra work. The answer of the defendant denied that for the purpose of inducing the plaintiff to remove the brick and other material referred to in the first paragraph of the complaint for a price less than the fair and reasonable value of the work he promised and agreed with the plaintiff that such brick and other material could be stored and remain upon a vacant lot immediately westerly from and adjacent to the premises mentioned in the complaint, and denied that he promised or represented that he would guaranty to the plaintiff the undisturbed possession of said lot for such purpose, and during such period. The defendant admitted that he did represent to the plaintiff that such brick and other material could be stored and remain upon said vacant lot, and that he made such representations believing them to be true; and he admitted that in consequence of such representations the plaintiff agreed to remove such brick and material for a price less than he would have been entitled to if it had not been for such representation. The defendant denied that the plaintiff, rely-

ing upon the representations, promises, and agreements of the defendant set forth in the complaint, did undertake to remove such brick, and to store the same upon said adjacent lot; but admitted that the plaintiff did rely upon defendant's representations as thereinbefore admitted, and that, in consequence thereof, he did undertake to remove such brick and material from defendant's premises, and to store the same upon said adjacent lot, and to use the same as alleged in the complaint. The answer denied that the sum of $400 was much less than the actual value of said proposed work of removal, and denied that the plaintiff, in consideration of the representations of the defendant, undertook such work of removal at a price far less than the actual value thereof, although the defendant admitted that the plaintiff, in consideration of defendant's representations thereinbefore admitted, did undertake such work of removal at a price somewhat less than the actual value thereof, provided the plaintiff had had the use of such adjacent lot for the purposes alleged in the complaint. The answer further denied that the representations made by defendant were untrue, and that the plaintiff was hindered from using 300,000, or any such number, of brick so stored by the plaintiff, but admitted that, by reason of the fact that he was deprived of the use of such lot, he was obliged to remove said brick from said lot, and alleged that he had no knowledge or information sufficient to form a belief as to the amount of brick and material so removed, and alleged upon information and belief that the plaintiff used or sold all the brick and material so removed by him in and about the construction of other buildings in the city of New York. The defendant further denied that the plaintiff had suffered damage in the sum of $900, or any such sum, but admitted that the deprivation of the use of said lot by the plaintiff for the purposes alleged cost the plaintiff some damage, in that the plaintiff was obliged to remove said brick, but that the defendant had no knowledge or information sufficient to form a belief as to the amount of such damage, but that the defendant had at all times been, and then was, ready and willing to pay such damage when ascertained. For answer as to the third cause of action the defendant denied that the last payment specified in said contract had matured, and that the same was due and owing to the plaintiff, and denied that the architects had unjustly and unreasonably refused to furnish a certificate to the plaintiff as to such last payment. The answer denied that the said sum of $3,100, or any part thereof, was justly due and owing to the plaintiff, and also denied the allegations in respect to extra work (except a portion thereof), the reasonable value of which as alleged is denied. The defendant set up a counterclaim, to which the plaintiff duly replied.

In this condition of the pleadings, upon the case coming on for trial, the learned court below held that the plaintiff, upon the admissions in the pleadings, could recover damages for the loss of brick claimed in the first cause of action, and left it for the jury to fix the value thereof, and charged the jury that for this sum the plaintiff was entitled to recover. In this, we think, the learned court erred. No matter if the agreement between these parties was as al-

leged upon the part of the plaintiff, the rule of damage was not the value of the brick which the plaintiff had placed upon these premises. It seems to us that, at most, the recovery of the plaintiff must have been limited to what it would have cost him to remove and store these brick for the purpose of holding them until the time when the building should be ready for their use in its construction. If the plaintiff, after a demand for the possession of the lot upon the part of the owner, had allowed the brick to become lost because of his failure to remove them, that does not make the defendant in any way liable for the loss of the brick. Even under the allegations of the complaint, all that the defendant guarantied to do was to furnish a place for the storage of the brick. If he did not furnish that place, and the plaintiff was compelled to procure another place, the measure of damage at the most must certainly be limited to what it would cost to remove the brick, and obtain a new place of storage. The court also seems to have erred in refusing to submit to the jury the question as to the nature of the contract between these parties. The contract, as alleged by the complaint, was denied by the answer, and an understanding or agreement of a different nature was alleged therein; and it was a question for the jury to determine as to whether there had been any such guaranty as would entitle the plaintiff to recover. The offer in the answer that the defendant was willing to pay whatever damage the plaintiff had sustained by reason of the representations made by him in no way affected the necessity of proof as to the nature of the contract in order that the damages might properly be arrived at. It would seem, unless there was an absolute undertaking upon the part of the defendant, that, without proof of the falsity of the representations made by him, no recovery could be had. All the questions in regard to the nature of the contract were, by the court, taken from the jury, and they were only allowed to assess the damage. In this, we think, the court erred.

In view of the conclusion at which we have arrived, it does not seem to be necessary to consider the question as to the errors in the admission of evidence in respect to the number of brick.

The next point to be considered relates to the questions arising under the third cause of action, which was brought to recover for the last installment of $3,100 under the mason-work contract, and for certain extra work. Before the plaintiff had fully completed his work of excavation preliminary to laying the foundation, it was discovered that the soil was in such a condition that it was not safe to erect the proposed building thereon, and that it would be necessary to make additional excavations before the plaintiff, could carry out his contract for the erection of the buildings upon the premises. Borings were made to enable the defendant to ascertain what it would cost to do the extra work, and by order of the architect the work was stopped until the defendant should decide what to do. After the borings were made, the plaintiff was sent for, and sketches were given to him to estimate the cost of putting down the foundation to rock. The work was actually stopped on the 20th of June, 1895. On the 3d of July the plaintiff went to the

architect's office to submit his estimate for the additional work, and he was told that they were waiting for an estimate from another party for the same work. In about 15 minutes a letter was brought, and, after a short conference between the architect and a person who was interested in the building with the defendant, they told the plaintiff that they had received an estimate from Sooysmith & Co. for doing this work, and had awarded the contract to them. The plaintiff then resumed his work, and started to do the excavating called for by his contract. He had resumed but a few days when one of the architects told him he would have to stop until Sooysmith had finished the work for which they had been given the contract. Sooysmith & Co. thereupon went on and performed the additional work of excavation, and laid the foundations up to the point from which the plan originally contemplated that the plaintiff should commence his work of construction. In doing this additional work of excavation, etc., Sooysmith & Co. necessarily performed part of the work originally included under the plaintiff's contract, viz. a part of the plaintiff's excavations, and a part of the shoring and underpinning of Chickering Hall, which was next to the lot in question. It is claimed upon the part of the defendant that the reasonable value of this omitted work should be deducted from the amount due to the plaintiff, and the plaintiff claimed that there should be no deduction, because the defendant had not pleaded any omission, and, second, because the defendant had no right to take the contract away from the plaintiff, and give it to Sooysmith & Co. The clause of the contract under which the defendant bases his claim that that portion of the work which was originally undertaken to be done by the plaintiff and which was done by Sooysmith & Co. in making the additional excavations and laying the additional foundations should be deducted from the last payment reads as follows:

"Third. Should the owner, at any time during the progress of the said building, request any alteration, deviation, additions, or omissions from the said contract, he shall be at liberty to do so, and the same shall in no way affect or make void the contract, but will be added or deducted from the amount of the contract, as the same may be, by a fair and reasonable valuation."

Upon the trial it was claimed upon the part of the defendant that the plaintiff had consented to the taking away of this work and to its being done by Sooysmith & Co. This, however, the plaintiff denied, and the court charged the jury that the defendant had no right to take away any part of the plaintiff's contract, and give it to another without the plaintiff's consent. This, we think, was a correct interpretation of the clause in question. It is evident that under the word "omissions" were intended to be included those things which were abandoned and left out of the plaintiff's contract, and not such as were taken out of the plaintiff's contract, and given to another to be performed. The word "omissions" did not mean omitted from the plaintiff's contract, but omitted from the work, and clearly could not be construed to have allowed the defendant to take two-thirds of the work from the plaintiff, and then compel him to perform the rest. The words are, "additions or omissions from said contract," evidently meaning additions to or omissions

from the work to be done under said contract, which clearly negatives the idea that they were intended to mean that the defendant should have the right to omit the work from the plaintiff's contract, in order to give the contract to another to do the same thing. We think, however, that the court erred in its instruction to the jury as to the rule of damage under these circumstances. If the plaintiff was not required to do the work, or did not do the work, he certainly was not entitled to recover that which the defendant under the contract had agreed to pay for such work, because that would not be the amount in which he was damaged; but he would be entitled to recover the profit he would have made in doing the work at the price mentioned in the contract. The court, however, charged, in substance, that the plaintiff, after the contract was taken away without his consent, was entitled to recover the amount called for by the contract upon the completion of the work, notwithstanding that he had not done certain parts of it, because it was done by others at the instance of the defendant. This rule of damage was clearly erroneous, as it was giving to the plaintiff the benefit of expenditures in the doing of the work which he had not made. That this was the intention of the court is emphasized by the last instruction given to the jury, in which the court says:

"Under the facts proved in this case, the jury can, if they find for the plaintiff under the third cause of action for that portion claimed under the contract, only find the sum of $3,100 and interest, and no greater or less sum."

As already suggested, this rule of damage was erroneous. We think, therefore, that, for the errors committed, there should be a new trial.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.